UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN C. & MAUREEN G. OSBORNE REVOCABLE FAMILY TRUST, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-cv-227 JD |
| TOWN OF LONG BEACH, INDIANA, et al., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

This action arises out of three homeowners' attempts to build seawalls on their properties abutting Lake Michigan in the Town of Long Beach, Indiana. The homeowners applied for a zoning variance, which they eventually received over some public opposition, after which they received building permits to construct the seawalls. Around the same time, however, a new set of officials was elected to the local government, having run on a platform of protecting the beach and opposing seawalls and building projects on the lakeshore. Challenges were then filed to the issuance of the building permits, resulting in stop-work orders and eventually decisions revoking the permits. The homeowners allege that this process was a coordinated effort among the new office-holders, their appointees, and a local interest group that shared their opposition to beachfront building projects—the Long Beach Community Alliance—all aimed at obstructing the homeowners' ability to build the seawalls.

Undeterred, the homeowners turned to state court. They first sued to bar the then-ongoing challenges to their permits. Once the building permits were finally revoked, the homeowners sued again, seeking judicial review of those decisions. While those two proceedings were pending, the homeowners filed this action in federal court. Their complaint spans sixty-five

pages and asserts thirteen counts against twenty-one defendants, including Long Beach and various of its subunits; thirteen individuals with roles in the local government, each in their individual and official capacities; the town's attorney; and two members of the Long Beach Community Alliance. The complaint asserts substantive due process, procedural due process, and equal protection claims under federal law. It asserts several claims under state law as well.

The defendants, appearing in three separate groups, have all moved to dismiss. They assert a litany of arguments in support of dismissing the various claims. For the reasons that follow, the Court finds that the homeowners have not pled a violation of any federally protected rights. Federal courts are not boards of zoning appeals, and constitutional claims arising out of zoning matters are quite narrow. The homeowners may or may not be right that they are entitled under state law to their building permits, and they may yet receive them—the state court has remanded the matters to the Board of Zoning Appeals for further proceedings—but they are not entitled to any relief as a matter of federal law. Accordingly, the Court dismisses the federal claims and relinquishes supplemental jurisdiction over the state claims.

## I. FACTUAL BACKGROUND

The Plaintiffs are three sets of owners of properties along Lake Michigan in Long Beach, Indiana. Due to erosion and storm damage, the Plaintiffs' underground septic systems became at risk of being breached and discharging their contents onto the beach and into the lake. The Plaintiffs thus wished to build seawalls along the beach to protect their properties. A local zoning ordinance prohibited any construction more than 106.6 feet north of the road, but the seawalls would need to be built past that, so the Plaintiffs each sought variances from that ordinance. [DE 5-1, -2, -3].

A number of hearings were held on those petitions before the Board of Zoning Appeals. The petitions "generated a large number of written and oral objections by various groups and

individuals who repeatedly expressed their oppositions to any type of construction activity on or near the beach area adjoining Lake Michigan." [DE 5 ¶ 47]. One of those groups was the Long Beach Community Alliance, a local organization that opposed building on the beachfront lots. Despite the opposition, on December 8, 2015, the Board of Zoning Appeals approved the variances. On December 30, 2015, the building commissioner issued building permits for each of the seawalls, and the Plaintiffs promptly began construction.

Around this same time, a local election was held that significantly changed the composition of the local government. A slate of candidates running as the Long Beach Party sought to appeal to voters "[c]oncerned with losing [their] right to enjoy the beach" and "[u]pset with the seawalls, septic systems and size of some newly built homes being permitted along the lake." [DE 5 ¶ 70]. They promised in their campaign flyers to "[p]rotect the enjoyment of Lake Michigan's shores for ALL residents" and to "[e]nsure uniform and responsible enforcement of Town ordinances, including building codes." *Id.* Those candidates were supported by the Long Beach Community Alliance. Ultimately, those candidates won all five seats of the Long Beach Town Council in the November 2015 election. Once they took office on January 1, 2016, they named new members to various municipal bodies, including the Advisory Plan Commission, the Building Commission, and the Board of Zoning Appeals.

By that time, the Plaintiffs' variances had already been granted and their building permits had already been issued. The new town officials and their supporters were still intent on preventing the construction of the Plaintiffs' seawalls, though. Rather than seeking judicial review of the Board of Zoning Appeals' final decisions granting the variances, they decided to file administrative appeals of the permits issued by the building commissioner, as those appeals would then be heard before the newly constituted Board of Zoning Appeals. The Long Beach

Community Alliance filed one set of administrative appeals, and another individual filed another set of appeals. The appeals essentially contended that, while the Plaintiffs received a variance from one particular ordinance, their seawalls failed to comply with a number of other ordinances, so the building permits should be revoked.[1]

Upon the filing of the appeals on January 25, 2016, the town's attorney directed the building commissioner to issue stop-work orders for each of the seawalls, thus halting their construction. The Plaintiffs immediately filed suit in state court, seeking to preclude the administrative appeals of the building permits. However, the state court refused to enjoin those proceedings, which thus continued before the Board of Zoning Appeals. Four of the five members of that board recused themselves because of their affiliation with the Long Beach Community Alliance, which filed one set of the appeals. Three alternate members were then named to the board. The Plaintiffs allege, however, that those alternates were affiliated with the Long Beach Community Alliance as well, with one of them being a former director of the organization. The Plaintiffs also allege that the individual who recommended those alternates, as well as the members of the Town Council who approved them, were also conflicted due to their affiliation with the Long Beach Community Alliance.

On March 16, 2016, the building commissioner issued certificates of imminent peril, which rescinded the stop-work orders and allowed the Plaintiffs to resume construction on their seawalls. However, the Building Commission held a meeting and voted to issue new stop-work orders for the seawalls' violation of an ordinance requiring any structures to be set back six feet from the property lines. The Plaintiffs allege that seawalls had never before been interpreted as

---

[1] The Plaintiffs contend that these appeals were defective for a variety of reasons, but those issues are not relevant to the federal claims, as explained below.

being subject to that requirement, and that the building commissioner believed that seawalls were not encompassed by that requirement. The Building Commission nonetheless instructed him to issue stop-work orders based on that requirement, which he did.

Finally, on June 29, 2016, the Board of Zoning Appeals issued final decisions revoking the building permits. The decisions concluded that, in the initial proceedings on the variance requests, the Plaintiffs had only sought and received a variance from a single ordinance. The decisions found that the seawalls failed to comply with two other ordinances, so they revoked each of the building permits. The Plaintiffs responded by filing suit in state court, seeking judicial review of those decisions. They alleged that the administrative proceedings were flawed in multiple respects, that the decisions were substantively erroneous, and that the board was biased against them and conflicted.

While the state actions were pending, the plaintiffs filed this action in federal court. Their complaint asserts a number of claims under the United States Constitution, as well as several claims under state law. As defendants, they named the Town of Long Beach, in addition to the Town Council, the Advisory Plan Commission, the Building Commission, and the Board of Zoning Appeals. They also named many of the members of those bodies as defendants, in both their official and individual capacities. They also named as defendants the town's attorney, a member of the Long Beach Community Alliance, and one of its attorneys. The Plaintiffs allege that the Defendants are liable either for their own actions, or for their participation in an overall conspiracy that caused the alleged violations.

The Defendants appeared in three separate groups. They began by each moving to stay this action pending conclusion of the proceedings in state court. They also each moved to dismiss the complaint. In the meantime, the state proceedings reached their conclusions. The state courts

dismissed the first action for lack of jurisdiction, as the Plaintiffs had not exhausted their administrative remedies. In the second action, for judicial review of the decisions revoking the building permits, the state court vacated the decisions and remanded the matters to the Board of Zoning Appeals, finding that one of its members should have recused herself due to her prior affiliation with the Long Beach Community Alliance. Once that judgment became final, the Defendants withdrew their motions to stay, and also filed a supplemental motion to dismiss, arguing that this action is now barred by *res judicata*. The motions to dismiss have each been fully briefed and are ripe for ruling.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor.[2] *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a

---

[2] The Plaintiffs object that one of the motions attached exhibits extrinsic to the complaint, and that the motions each referred to the Defendants' separately briefed motions to stay, which also included attached exhibits. None of those materials are necessary to the motions to dismiss, though, so the Court does not rely on them and it is unnecessary to convert the motions to motions for summary judgment. Fed. R. Civ. P. 12(d).

motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### III. DISCUSSION

The Defendants have all moved to dismiss the complaint. They first argue that the complaint fails to plead a violation of any federal rights. They also offer various arguments for why certain of the Defendants are not responsible for or are immune to liability for any federal violation. As to the state law claims, they argue that those claims are barred as to certain individual Defendants under various state-law doctrines, among other arguments. In a joint supplemental motion, the Defendants further argue that this action is barred by res judicata now that the Plaintiffs' judicial review action has reached a judgment on the merits.[3]

The Court only reaches the merits of the federal claims. It is important to note at the outset that federal courts "are not boards of zoning appeals." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994). The Seventh Circuit has emphasized that principle "time and again." *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) (collecting cases); *see also Harding v. Cty. of Door*, 870 F.2d 430, 432 (7th Cir. 1989) ("We conclude by reminding potential litigants that the federal courts are ordinarily not vehicles to review zoning board decisions."); *Coniston Corp. v. Village of Hoffman Estates*, 844

---

[3] One of the motions also argues that this action is barred by the *Rooker–Feldman* doctrine, under which federal district courts lack jurisdiction to review the judgments of state courts. This action is not a de facto appeal of the state court actions and does not seek to alter those judgments, though, so it is not barred by *Rooker–Feldman*. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court."); *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018) ("The vital question . . . is whether the federal plaintiff seeks the alteration of a state court's judgment.").

F.2d 461, 466–69 (7th Cir. 1988). It has even gone so far as to admonish litigants and their attorneys to review that line of cases before bringing a dispute over a zoning matter to federal court. *Harding*, 870 F.2d at 432. Naturally, those cases form the centerpiece of the Defendants' briefs. Yet, though the table of authorities in their brief exceeds six pages, the Plaintiffs have avoided so much as even citing to those cases, much less addressing them and explaining why they do not foreclose their claims. Regardless, the arguments the Plaintiffs do offer fail to support the existence of a federal claim. The Court addresses the substantive due process, procedural due process, and equal protection claims in turn, and then addresses its supplemental jurisdiction over the state claims.

## A.    Substantive Due Process

The Plaintiffs first assert substantive due process claims. They assert that the Defendants acted irrationally in objecting to their seawalls, leading to the issuance of stop-work orders and the revocation of their permits; that those proceedings were procedurally improper and should not have been instituted in the first place; and that the Defendants misapplied the ordinances in finding that the seawalls were prohibited.

For a substantive due process claim, a plaintiff must demonstrate that the challenged conduct "infringes a fundamental liberty interest" or that it is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cty., Ind.*, 57 F.3d 505, 514 (7th Cir. 1995). The Plaintiffs do not suggest that any fundamental liberty interests are at stake,[4] so the question is whether the challenged conduct is arbitrary and unreasonable, meaning that it lacks any rational connection to a

---

[4] "The adjective 'fundamental' in this setting is reserved for deeply-rooted, sacrosanct rights such as the right of a man and woman to marry, and to bear and raise their children." *Greater Chicago Combine & Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1071 (7th Cir. 2005).

legitimate government interest. The Seventh Circuit has also described that standard as requiring that the conduct be "invidious or irrational," or must "shock the conscience" or be "egregious" in order to implicate substantive due process. *CEnergy*, 769 F.3d at 488. Government action may be rational "even if it is 'unwise, improvident, or out of harmony with a particular school of thought.'" *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (quoting *Eby-Brown Co. v. Wis. Dep't of Ag.*, 295 F.3d 749, 754 (7th Cir. 2002)).

In deciding whether governmental action has a rational basis, it is not necessary to determine what actually motivated the challenged action; "'governmental action passes the rational basis test if a sound reason may be hypothesized.'" *Greater Chicago Combine*, 431 F.3d at 1071–72; *see Goodpaster*, 736 F.3d at 1071 ("It is irrelevant whether the reasons given actually motivated the legislature; rather, the question is whether some rational basis exists upon which the legislature could have based the challenged law."). Thus, even at the pleading stage, claims that depend on the absence of a rational basis will fail if the complaint "reveals a potential rational basis for the actions of local officials." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015).

Here, the complaint plainly reveals a potential rational basis for the opposition to the Plaintiffs' permits. The Plaintiffs proposed to construct seawalls on the beach in front of their homes. Yet, according to the complaint, the Defendants "opposed construction on the beachfront lots." [DE 5 ¶ 71, *see also* ¶ 6 ("Many of the Defendants [were associated with] . . . the Long Beach Community Alliance, which openly opposes building on the beachfront lots.")]. In fact, the challenges to the Plaintiffs' permits came after an election in which the winners—each of whom are defendants here—all sought to appeal to voters who were "[c]oncerned with losing [their] right to enjoy the beach" and "[u]pset with the seawalls, septic systems and size of some

newly built homes being permitted along the lake[.]" *Id.* ¶ 70. Those candidates pledged to

"[p]rotect the enjoyment of Lake Michigan's shores for ALL residents" and "[e]nsure uniform

and responsible enforcement of Town ordinances, including building codes." *Id.* The Plaintiffs

also allege that their requests for variances to build the seawalls "generated a large number of

written and oral objections by various groups and individuals who repeatedly expressed their

oppositions to any type of construction activity on or near the beach area adjoining Lake

Michigan." *Id.* ¶ 47.

Public opposition to construction along the Lake Michigan beach—a natural resource—is

a rational basis for government action. The Plaintiffs' seawalls would entail construction along

that beach, so the complaint reveals a rational basis for the opposition to those projects. The

Plaintiffs obviously weigh the policy considerations differently, but their interest in building

seawalls to protect their property, and their belief that doing so does not unnecessarily disturb the

beach's natural condition, does not make it irrational for town officials to believe otherwise.[5] *See*

*Coniston*, 844 F.2d at 467 ("[T]he fact 'that town officials are motivated by parochial views of

local interests which work against plaintiffs' plan and which may contravene state subdivision

laws' (or, we add, local ordinances) does not state a claim of denial of substantive due process."

(quoting *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)). In addition, the

fact that the candidates who ran on that platform swept the election further supports the

rationality of the Defendants' actions. As the Seventh Circuit discussed in *Coniston*, "[N]othing

is more common in zoning disputes than selfish opposition to zoning changes. The Constitution

---

[5] To the extent the Plaintiffs argue that a refusal to allow construction of their seawalls will
deprive them of the use of their property by preventing them from using their septic systems that
will be left at risk, that is a takings claim, but they do not assert such a claim here, nor could they
prior to seeking compensation in state court.

does not forbid government to yield to such opposition; it does not outlaw the characteristic operations of democratic (perhaps of any) government, operations which are permeated by pressure from special interests." *Coniston*, 844 F.2d at 467. The Seventh Circuit reiterated that in *CEnergy*, noting that "[a]s far as the Constitution is concerned, popular opposition to a proposed land development plan is a rational and legitimate reason for a legislature to delay making a decision." *CEnergy*, 769 F.3d at 488.

In arguing that the actions here were irrational, the Plaintiffs allege a litany of ways in which the challenges to the permits violated state law and local ordinances. They assert that the approvals of the initial variance requests were *res judicata* against any later objections to their permits; that the objectors lacked standing to object to the permits and failed to name the Plaintiffs as interested parties as required by state law; that the Board of Zoning appeals lacked authority to act while the Plaintiffs were seeking to enjoin its proceedings in state court (in an action that was itself dismissed for lack of jurisdiction[6]); that the board was not properly constituted under state law; that the officials exceeded their authority; that the board incorrectly interpreted and applied the ordinances in revoking their permits, and so on. Their complaint is littered with citations to local ordinances, the Indiana Code, and even the Indiana Rules of Trial Procedure, in alleging all of the ways in which the Defendants' actions were improper.[7]

---

[6] The Plaintiffs nonetheless allege that the Defendants "engaged in baseless motion practice, including filing a motion to dismiss" that action. [DE 5 ¶ 112].

[7] For example: "The LBCA's administrative appeals were substantively and procedurally defective for a long list of reasons . . . including, but not limited to (a) failing to designate any of the Owners as "Interested Parties" as required *by Indiana Code*, § 36-7-4-920; (b) being filed by an entity that has no standing to challenge any zoning decision *under Indiana law*; and (c) substantively mounting a collateral attack on the 2015 BZA Final Action as a means of circumventing the requirements *of Indiana Code* § 36-7-4-1605 . . . ." [DE 5 ¶ 85 (emphasis added)].

Those are all matters of state law, though, and once again, federal courts are not boards of zoning appeals. In revoking the permits, the zoning board cited the seawalls' failure to comply with specific ordinances. Perhaps those conclusions were incorrect, or perhaps the proceedings were flawed, but that does not make them irrational as a constitutional matter. *Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1997) ("Whether the City has violated state law is neither here nor there; the due process clause is not a means to enforce state law."); *Hartland Sportsman's Club, Inc. v. Town of Delafield*, 35 F.3d 1198, 1202 (7th Cir. 1994) (holding that the "Town's zoning action in violation of state law . . . does not in itself rise to the level of a violation of substantive due process," even though it deprived the plaintiff of a vested right in its permit); *Coniston*, 844 F.2d at 466 ("No one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions.").

The plaintiff in *Coniston* made similar arguments, contending that the village board had no authority to reject its site plan once it had been approved by the village plan commission, but the Seventh Circuit was unswayed:

> If the plaintiffs can get us to review the merits of the Board of Trustees' decision under state law, we cannot imagine what zoning dispute could not be shoehorned into federal court in this way, there to displace or postpone consideration of some worthier object of federal judicial solicitude. Something more is necessary than dissatisfaction with the rejection of a site plan to turn a zoning case into a federal case; and it should go without saying that the something more cannot be merely a violation of state (or local) law. A violation of state law is not a denial of due process.

*Coniston*, 844 F.2d at 847. Likewise in *Harding*, the plaintiff argued that the town lacked authority to revoke its building permit, and the state courts agreed with the plaintiff and reversed the town's decision. The Seventh Circuit still rejected the due process claim, holding that "[a]lthough the Wisconsin Court of Appeals ultimately determined that the Board's interpretation of the zoning ordinance was erroneous, this fact does not transform the Board's

rational decision into an irrational one." *Harding*, 870 F.2d at 432. Thus, the Plaintiffs' arguments about the state laws and local ordinances do not show that the Defendants' actions were irrational.[8]

For those reasons, the Court finds that the Plaintiffs have failed to plead a violation of their substantive due process rights, so the Court grants the motions to dismiss as to these claims.

## B.     Procedural Due Process

Next, the Plaintiffs assert procedural due process claims, contending that the Defendants' conduct in opposing and ultimately revoking their building permits has deprived them of property without due process of law. In support of these claims, the Plaintiffs rely on many of the alleged procedural flaws just noted. In particular, they argue that the Defendants improperly filed administrative objections to their building permits instead of seeking judicial review of the variance decisions; that the Defendants exceeded their authority in directing the building commissioner to issue stop-work orders upon the filing of the objections; and that the members of the Board of Zoning Appeals were biased and conflicted because of their affiliation with the Long Beach Community Alliance, which filed some of the objections. The Plaintiffs thus argue

---

[8] These claims fail for other reasons as well. The Seventh Circuit has held that, to make out a substantive due process claim based on a land-use decision, "'in addition to alleging that the decision was arbitrary and irrational, the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies.'" *Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996). As discussed below, the Plaintiffs have not done so. Also, in similar cases, the Seventh Circuit has found that substantive and procedural due process claims were merely mis-labeled takings claims. *Flying J*, 549 F.3d at 543–45; *Jackson v. Village of W. Springs*, 612 F. App'x 842 (7th Cir. 2015). Under *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), those claims require plaintiffs to first receive a final decision on the application of the zoning regulations and then seek compensation through an inverse condemnation proceeding in state court, which the Plaintiffs here have not done. *See Flying J*, 549 F.3d at 543. The Defendants have not raised that particular issue, though, and because *Williamson County's* ripeness requirement is not jurisdictional, the Court need not decide it.

that they were denied a fair and unbiased process when they were deprived of their property interests through the stop-work orders and the revocation of their permits.

The Due Process Clause does not prohibit deprivations of property altogether, but only deprivations of property "without due process of law." U.S. Const. amend XIV § 1. A "'constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 807 (7th Cir. 2010) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). Procedural due process claims thus require plaintiffs to establish, first, that they have been deprived of a protected property interest, and second, that they did not receive the process that is "due" for such a deprivation. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

The Seventh Circuit has held, however, that "the procedures 'due' in zoning cases are minimal." *River Park*, 23 F.3d at 166. In *River Park*, for example, the plaintiff filed a zoning application, which state law required the city to grant. Members of the public and city officials opposed the plaintiff's project, though, and organized a committee in opposition. City officials then began engaging in stalling tactics in an attempt to obstruct the project, eventually forcing the plaintiff into bankruptcy and killing the project. The plaintiff then sued in federal court, alleging that the city's delaying and maneuvering and the violations of state law violated its due process rights. The Seventh Circuit disagreed:

> [The city] made a political decision in a political fashion, employing procedural maneuvers that prevented the question from reaching the floor for a vote. . . . [The plaintiff] may not have received the process Illinois directs its municipalities to provide, but the Constitution does not require state and local governments to adhere to their procedural promises. Failure to implement state law violates that state law, not the Constitution; the remedy lies in state court.

*Id.* at 166–67. The court also noted that, as far as the Constitution is concerned, "State and local governments may regulate and even take property; they must *pay* for what they take but are free to use the land as they please." *Id.* at 167. Thus, though the plaintiff could pursue the matter in state court, it could not state a procedural due process claim under the Constitution. *Id.* 167.

In their response, the Plaintiffs do not even acknowledge *River Park*, though it was the principal basis for the Defendants' motion to dismiss these claims. Instead, the Plaintiffs argue that the state courts do not supply the process that is due because damages are not available as a remedy in an action for judicial review, making the state remedies inadequate. However, that argument is non-responsive to *River Park*, which did not rest on the adequacy of state remedies, but on the "scant" process that is due in these cases: "the idea in zoning cases is that the due process clause permits municipalities to use political methods to decide, so that the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts." *River Park*, 23 F.3d at 167. There may well be other bases on which to distinguish *River Park*, but the Plaintiffs do not suggest any, and have waived their chance to do so by failing to develop such an argument.

Regardless, numerous courts in this circuit have held that, even assuming some process is due in this context, the ability to seek review of the challenged decisions in state court supplies that process, even in cases where the plaintiffs sought damages or alleged that they suffered harm in the interim. *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 712 (7th Cir. 2004) (holding that the plaintiff's ability to seek relief in an Indiana state court provided an adequate remedy, even though the plaintiff sought monetary damages); *Doherty*, 75 F.3d at 324 (holding that the plaintiff had an adequate remedy at state law because decisions of the zoning boards were subject to judicial review in Illinois state courts); *New Burnham Prairie Homes, Inc. v.*

*Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) (holding that because "state law provides a remedy for the alleged unauthorized deprivation" through a mandamus action in state court, "the district court did not err in dismissing the procedural due process claim"); *View Outdoor Advert., LLC v. Town of Schererville Bd. of Zoning Appeals*, 86 F. Supp. 3d 891, 898–99 (N.D. Ind. 2015) ("[L]et's suppose for a moment that the procedure used in this case was inadequate. [The plaintiff] still has further post-deprivation remedies available to it [in Indiana state courts] that the Seventh Circuit has held are enough to meet the BZA and Council's due process obligations."); *Peterson v. Town of Fishers*, No. 1:08-cv-884, 2008 WL 4410380, at *4–5 (S.D. Ind. Sept. 24, 2008) (holding that the ability to seek review in Indiana trial courts provided an adequate remedy, even though the plaintiffs alleged "that they were denied due process because the BZA was improperly constituted and lacked jurisdiction" and "that the BZA was biased and prejudiced against them"); *see also CEnergy*, 769 F.3d at 489 ("[R]egardless of how a plaintiff labels an objectionable land-use decision (i.e., as a taking or as a deprivation without substantive or procedural due process), recourse must be made to state rather than federal court.").

Indiana law provides extensive procedural protections in this context. In addition to regulating proceedings before local zoning boards, Indiana law provides for judicial review of local zoning decisions in the state trial courts, which are then subject to appellate review. Ind. Code §§ 36-7-4-1602, -1616. Indiana courts have authority to set aside a zoning decision for any of the reasons the Plaintiffs raise here, including if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "without observance of procedure required by law[.]" *Id.* § 36-7-4-1614(d).

16

The courts have authority to remand for further proceedings or compel a decision that has been unreasonably delayed or unlawfully withheld. *Id.* § 36-7-4-1615. A party may also seek review of a non-final zoning decision if they establish an immediate and irreparable harm and no adequate remedy exists at law. *Id.* § 36-7-4-1602(c). A party may also seek a stay of the challenged zoning decision pending review by the court. *Id.* § 36-7-4-1609(a). That framework for judicial review suffices to provide whatever process may be due in this context.[9]

The Plaintiffs assert that the Defendants have deprived them of access to this judicial review process by choosing to file administrative objections to their building permits, instead of seeking judicial review of the initial variance decisions. The Court does not see how, though. In deciding not to seek judicial review of the variance decisions, the Defendants are presumably bound to accept whatever degree of finality state law attaches to such decisions. But even assuming the Plaintiffs are correct that those decisions then become preclusive as to any objections to the building permits, all that would mean is that the board was bound to reject the challenges. If it erred and failed to do so, the Plaintiffs could then seek judicial review of those decisions to enforce whatever rights they gained through the variance decisions. The Defendants' procedural maneuvering thus in no way deprives the Plaintiffs of access to judicial review.

Finally, despite objecting to lack of monetary relief available in a judicial review action, the Plaintiffs fail to acknowledge that they are also asserting claims for damages under Indiana law for this same conduct, including claims for fraud, a claim under Indiana's Crime Victims

---

[9] The Plaintiffs also argue in response to the supplemental motion to dismiss that the state court's ruling in the judicial review action is preclusive as to a violation of their due process rights. The state court relied on state law, however, not the federal Constitution, and its ruling is not preclusive on that subject. *See View Outdoor Advertising*, 86 F. Supp. 3d at 898. To the contrary, as the Defendants note, the state court's judgment illustrates the adequacy of the state remedies, as the board's decision has been vacated and the matter has been remanded for further proceedings in which the Plaintiffs can defend their permits.

Relief Act, and a claim for intentional infliction of emotional distress. The Plaintiffs seek compensatory damages, punitive damages, treble damages, and attorneys' fees as relief for those claims. The Plaintiffs suggest in passing that those remedies are inadequate because the individual defendants have asserted immunity defenses against those claims. However, the Town of Long Beach has not claimed any immunity, and the Plaintiffs have not addressed why their claims against that defendant are inadequate to provide the relief they seek.

For those reasons, the Court finds that the Plaintiffs have not pled a claim for a denial of their procedural due process rights. The Court therefore grants the motions to dismiss as to these claims.

## C.    Equal Protection

Finally, the Plaintiffs assert that the Defendants have violated their rights under the Equal Protection Clause by issuing stop-work orders based on an ordinance that had not previously been applied to projects such as theirs. The Plaintiffs do not allege that the Defendants acted because of their race, for example, or based on another protected classification, as would trigger heightened scrutiny under the Equal Protection Clause. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). Nor do they allege that the Defendants have interfered with their fundamental rights, such as their freedom of speech or religion, as would also trigger heightened scrutiny. *Id.* Instead, they assert a "class of one" claim, alleging that they have been singled out for different treatment without rational justification. *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is not rational basis for the difference in treatment."); *Miller*, 784 F.3d at 1121.

The precise requirements of such a claim are subject to dispute, but at the very least, "plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Miller*, 784 F.3d at 1121; *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014). The Seventh Circuit recently discussed the standard for evaluating such a claim at the pleading stage:

> "a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Scherr v. City of Chicago,* 757 F.3d 593, 598 (7th Cir. 2014) (internal quotation marks omitted). It is not enough for a complaint to suggest an improper motive, for "'[a] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.'" *Fares Pawn,* 755 F.3d at 845 (quoting *Flying J,* 549 F.3d at 547). Thus, even at the pleadings stage, "[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp,* 725 F.3d 681, 686 (7th Cir.2013). For that reason, it is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials. *See id.* (affirming dismissal of class-of-one claim when complaint revealed rational basis for treating plaintiff differently notwithstanding facts suggesting officials had potentially improper motives); *Flying J,* 549 F.3d at 547–48 (same).

*Miller*, 784 F.3d at 1121–22 (alterations in original). Thus, in short, if courts "'can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no.'" *Id.* at 1122 (quoting *Fares Pawn,* 755 F.3d at 845).

The basis for the Plaintiffs' equal protection claim is the stop-work orders that were issued because their seawalls did not comply with a "six-foot setback" requirement. The Plaintiffs note that a local ordinance requires any "structures" to be set back at least six feet from the property line. In the past, seawalls were interpreted as "utilities," not "structures," so they were not subject to that requirement, and property owners had been allowed to build seawalls up to their property lines without seeking a variance from that ordinance. The Defendants, however, decided to interpret seawalls as constituting "structures," thus making seawalls subject to the setback requirement for the first time. Because the Plaintiffs' seawalls would extend to the ends

of their properties, the Defendants issued stop-work orders for the failure to comply with the setback requirement.

The Plaintiffs argue that this change in interpretation violates the Equal Protection Clause because other property owners had never previously been required to comply with the setback requirement in building seawalls. The Plaintiffs do not claim, however, that the Defendants are selectively applying this new interpretation. In fact, the Plaintiffs here include three sets of owners of three different properties, and this same interpretation was applied in the same manner to each of the three properties.[10] Rather, the Plaintiffs' complaint is with the change—that given the new interpretation, the Plaintiffs' seawalls are now subject to the setback requirement where seawalls built previously were not.

These allegations fail to state a class-of-one claim. The Equal Protection Clause does not impose a doctrine of *stare decisis* on local zoning boards, and the mere fact that previous boards had not interpreted the setback requirement in the same way does not create an equal protection problem. In addition, the complaint plainly reveals a rational basis for this change in direction— the new interpretation was adopted by a new set of officials, after candidates who opposed building along the lakefront and who advocated for the enforcement of the building codes swept the election and gained control of the local government. [DE 5 ¶¶ 7 ("In the November 2015 election, a slate of candidates backed by the LBCA swept all five seats of the Long Beach, Indiana Town Council, which significantly changed the composition of the Long Beach Town

---

[10] The Plaintiffs also allege that the Defendants categorically oppose seawalls and planned to oppose the permit for the construction of any seawalls. DE 5 ¶ 71 ("Both the LBCA and the Long Beach Party openly opposed construction on the beachfront lots, including the Owners' seawalls . . . ."), 78 (alleging an agreement to "file an administrative appeal of every permit granted to build a seawall"), 102 (alleging that the Defendants "agreed they would start treating seawalls as structures").

Council in favor of the LBCA."), 69–71]. It is no wonder that those different officials with different policy goals should interpret the building code in a different manner.

This change in circumstances provides a rational basis for the difference in treatment. In *Purze v. Village of Winthrop Harbor*, 286 F.3d 452 (7th Cir. 2002), for example, the plaintiff complained that he was treated different from other property owners when his variance request was denied. The Seventh Circuit held that the class-of-one claim failed, though, because the other owners had sought variances "during different time periods" and from "different and previous Boards" than the plaintiff. *Id.* at 455. Likewise, in *Bell v. Duperrault*, 367 F.3d 703 (7th Cir. 2004), the plaintiff complained that the state agency subjected his permit application to greater scrutiny than other similar permits that it had granted. However, the agency had made a policy decision to increasingly scrutinize permits because of environmental concerns. That provided a rational basis for the difference and foreclosed the plaintiff's class-of-one claim, even though other similar permits had recently been granted. *Id.* at 708.

The Seventh Circuit's decision in *Flying J Inc. v. City of New Haven*, 549 F.3d 538 (7th Cir. 2008) is also closely on point. There, local officials opposed a development project by Flying J, in part because some of the officials owned adjacent property. Flying J appealed the adverse zoning decisions in state court, where it ultimately prevailed. Still determined to thwart the project, the town officials then voted to adopt a new ordinance, without notice to Flying J. The new ordinance applied generally on its face, but Flying J's project was the only one it would have affected. Flying J returned to the state courts, which held that the new ordinance violated state law by depriving Flying J of its vested right in its building permits.

Flying J then sued in federal court, arguing that the new ordinance violated its rights under the Equal Protection Clause. However, the complaint was dismissed at the pleading stage,

and the Seventh Circuit affirmed on appeal. The court was able to hypothesize a rational basis for the new ordinance, and noted that "a classification is not irrational simply because it was adopted in response to a specific proposed development." *Id.* at 547. The court also noted that, even though Flying J's project was the only one that the ordinance would affect at present, there was no allegation that the town would not apply the new ordinance in the future if another developer tried to construct a similar project. *Id.* at 547–48. Thus, the court held that Flying J failed to plead an equal protection claim, even though the Defendants were allegedly motivated by their own personal interests, and even though the ordinance violated state law. *Id.* at 547–48.

The same is true here. The Plaintiffs object that the Defendants adopted a "new *ex post facto* application" of the setback requirement, but that was equally the case in *Flying J*, where the town adopted a new ordinance after the fact in an attempt to curtail the project. Like in *Flying J*, there is a rational basis for the new interpretation, and there is no allegation that it will not be applied in the future to other similar projects, such that the Defendants are selectively enforcing that new interpretation. The Plaintiffs also object that this new interpretation came in direct response to their projects, in a concerted effort to thwart those projects. Again, those factors were also present in *Flying J*, and do not create an equal protection problem. That remains true even if the Defendants violated state law, acted out of animosity against the Plaintiffs, or have conflicts of interest. *Flying J*, 549 F.3d at 547–48.

The Plaintiffs also argue that applying the setback requirement to seawalls would be irrational because it would undermine the purpose of the seawalls. That argument could be a basis to seek a variance from that requirement, but it does not make it irrational for the Defendants to interpret seawalls as constituting "structures" under the generally applicable ordinance. *See Bell*, 367 F.3d at 708 ("It is not enough that the [agency] acted in a way that [the

plaintiff] believes to be ineffective or even destructive. Rather, [the plaintiff] must eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification."); *Harding*, 870 F.2d at 432 (holding that a decision is not irrational merely because it is erroneous). And in any event, as noted above, it would not be irrational to oppose seawalls altogether—to prefer that the beach remain free of construction, even at the expense of the Plaintiffs' property—so the Defendants need not interpret the building code in a way that would allow the seawalls' construction.

Accordingly, the Court finds that the Plaintiffs have failed to plead an equal protection claim; since their complaint reveals a rational basis for the distinction of which they complain, they have pleaded themselves out of court. The Court therefore dismisses these claims.

**D.      Remaining Issues**

Having decided that each of the Plaintiffs' federal claims fail to state a claim, the first question is whether the Plaintiffs should be granted leave to amend. They have already used their one chance to amend as of right, Fed. R. Civ. P. 15(a)(1), though even then courts generally permit at least one opportunity to amend after dismissing a claim. Here, however, the problem is not that the Plaintiffs have alleged too few facts to make their claims plausible, such that they could cure the deficiency in an amendment. It is that the facts alleged in the complaint illustrate the existence of a rational basis for the Defendants' actions, and that the Plaintiffs are not entitled to any more process than is available to them in the state, which forecloses their federal claims. *Miller*, 784 F.3d at 1121 ("[I]t is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials."). In addition, the Plaintiffs do not request leave to amend or suggest any other facts they could add to their complaint to change that outcome. Under those circumstances, granting leave to amend is not warranted, so the Court dismisses the federal claims with prejudice.

That leaves the claims arising under state law, over which this Court has supplemental jurisdiction. Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

Relinquishing supplemental jurisdiction is appropriate here. The federal claims have been resolved at an early stage of the case, and the remaining claims involve issues of state law, such as whether the Plaintiffs' allegations give rise to relief under state law, whether the Defendants are entitled to certain immunities under state law, and whether the Plaintiffs' remaining claims are barred by *res judicata* under state law.[11] Comity dictates that the state courts should have the opportunity to address those questions of state law. *Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." (internal citations omitted)). The Plaintiffs' only argument to the contrary is that the statute of limitations might have run on some of their state claims. Not so.

---

[11] Two of the Defendants also assert a federal defense to the state claims, but that discrete issue, which may or may not become necessary to reach, does not warrant retaining supplemental jurisdiction.

Under 28 U.S.C. § 1367(d), any limitations period on a claim over which a federal court has supplemental jurisdiction is tolled while the federal case is pending. *Artis v. Dist. of Columbia*, 138 S. Ct. 594 (2018). The statute of limitations thus does not require that this Court retain supplemental jurisdiction over the remaining state claims. Therefore, the Court relinquishes jurisdiction over those claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to dismiss [DE 40, 42, 44] as to the federal claims, and relinquishes supplemental jurisdiction over the state claims, which are dismissed without prejudice. The Court DENIES as moot the supplemental motion to dismiss. [DE 65]. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED:  March 26, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court